UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

PAIGE P.,[1]

                            Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

DECISION AND ORDER

24-CV-0333-MAV

———————————————————

## INTRODUCTION

In April 2024, Paige P. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") determination that her disability ended in December 2016, that she has not become disabled again since that date, and that she was not entitled to a continuation of her childhood Supplemental Security Income ("SSI") benefits or SSI benefits once she became an adult. ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 8 (Plaintiff); ECF No. 17 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 8] is denied. The Commissioner's motion [ECF No. 17] is granted.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

history in this case, and therefore addresses only those facts and issues which bear

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Receipt of SSI Benefits as a Child

Section 1382c(a)(3)(C) of Title 42 of the United States Code requires the agency

to deem a child disabled for the purposes of Supplemental Security Income ("SSI")

benefits if the child: (i) "has a medically determinable physical or mental impairment,

which results in marked and severe functional limitations, and which can be expected

to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months"; and (ii) does not engage in substantial gainful activity.

Plaintiff was born on October 5, 1999, making her a "school age child" at the

time of her application for SSI benefits in February 2011. Administrative Record

("AR"), 129,[2] ECF Nos. 5–7. On September 27, 2012, an Administrative Law Judge

("ALJ") performed the three-step sequential analysis[3] required for child claimants

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

[3] Whereas an adult's claim for SSI is subject to a five-step evaluation process, claims for children are evaluated through a three-step process. *Compare, e.g.*, 20 C.F.R. § 416.920(a)(4)(i)–(v), with *Id.* at § 416.924(a)–(d). At step one of the three-step process for evaluating claims for children, the ALJ examines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(a)–(b). If the child is not engaged in substantial gainful activity, then the analysis moves to step two, and the ALJ considers whether the child has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(c). If the child has an impairment or combination of impairments that is severe, then at step three the ALJ considers whether the child has an impairment or combination of impairments that both meets the 12-month duration requirement, and meets, medically equals, or functionally equals an impairment on the listing of impairments in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations ("the Listings"). 20 C.F.R. § 416.924(d). If the impairment does not meet or medically equal a listing, the agency evaluates the "functional equivalence" of the limitation or limitations in six domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. See, e.g., *Roxanne H. o/b/o A.H. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06688 EAW, 2022 WL 4493931, at *2 (W.D.N.Y. Sept. 28, 2022) (citing *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009)). A child claimant's impairment is the "functional equivalent" of a listed impairment if that child has marked limitations in two domains of functioning, or an extreme limitation in one domain. 20

under 20 C.F.R. § 416.924, and found that Plaintiff had not engaged in any substantial gainful activity and had the following severe impairments: attention deficit, hyperactivity disorder ("ADHD"); learning disability; and pervasive personality disorder. *Id.* The ALJ then found that Plaintiff's impairments caused marked limitation in three of the six functional domains identified in the Commissioner's regulations: acquiring and using information, attending and completing tasks, and interacting and relating to others. AR at 129–132. Therefore, the ALJ found that Plaintiff's impairments functionally equaled the severity of the Listings. *Id.*

Based on his findings of functional equivalence, the ALJ determined that Plaintiff had been under a disability since the time her application was filed in February 2011, and she was awarded SSI benefits. AR at 132.

## II. Cessation of Plaintiff's SSI Benefits

Section 421(i) of Title 42 of the United States Code provides that, "[i]n any case where an individual is or has been determined to be under a disability, the case shall be reviewed by the applicable [s]tate agency or the Commissioner of Social Security (as may be appropriate), for purposes of continuing eligibility, at least once every 3 years." 42 U.S.C. § 421(i).

Thus, child claimants eligible for SSI benefits are reviewed periodically to verify continued eligibility. 20 C.F.R. § 416.994a(a). This involves a three-step inquiry: (1) Has there been medical improvement in the child's condition(s) since the

---

C.F.R. § 416.926a(d). If an impairment or combination of impairments meets, medically equals, or functionally equals the listings, and if the child meets the duration requirement, then the ALJ must find the child to be disabled. 20 C.F.R. § 416.924(d)(1).

time of the most recent favorable decision? (2) Does the child's impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before? (3) Is the child currently disabled? *See* 20 C.F.R. § 416.994a(b). The "most recent favorable decision" identified in the first step is referred to as the "comparison point decision" or CPD. *See Roxanne H. o/b/o A.H.*, 2022 WL 4493931, at *2.

In December 2016, Plaintiff received notice that her case had been reviewed to verify that she was still eligible for benefits, and that the Commissioner had determined she no longer qualified for SSI. AR at 136. Plaintiff's Cessation Notice stated that she was found to be disabled in 2012 because of her ADHD and learning disability, but that more recent evidence obtained from her school district, medical providers, and a consultative examination showed that her health had improved and she no longer met the disability requirements as of December 28, 2016. AR at 142.

Plaintiff sought reconsideration of the Commissioner's decision, but the state agency hearing officer confirmed in June 2017 that Plaintiff was no longer eligible for benefits. AR at 148. The hearing officer found that the evidence showed Plaintiff had experienced "significant medical improvement," and that she no longer functionally equaled the listing. AR at 157. Specifically, the hearing officer found that Plaintiff had less than marked limitations in the domains of health and physical well-being, acquiring and using information, and relating with others, and that she had no limitations in any other functional domain. *Id.* The hearing officer also found that Plaintiff was able to focus and complete tasks, follow directions in school, and was no longer disruptive or aggressive. *Id.*

After receiving the state agency decision on reconsideration, Plaintiff

requested a hearing before an ALJ. AR at 169. Plaintiff's request was granted, and

she appeared for a hearing in May 2019. AR at 46. After a supplemental hearing at

Plaintiff's request in August 2019 to take the testimony of a medical expert, the ALJ

issued a decision affirming that Plaintiff's disability ended as of December 28, 2016.

AR at 34, 98.

Further, the ALJ found that Plaintiff attained age 18 on October 5, 2017 and

proceeded to evaluate Plaintiff under the Commissioner's five step sequential

evaluation process for adults.[4] AR at 34–39. He found that Plaintiff had not

developed any new impairments since attaining age 18, but that she continued to

have severe impairments consisting of Autism Spectrum Disorder and ADHD. AR at

34. After finding that these impairments did not meet or medically equal an

impairment from the Listings, the ALJ found that Plaintiff retained the residual

functional capacity[5] ("RFC") to perform work at the medium exertion level as defined

by 20 C.F.R. § 416.967(c), with the following restrictions:

---

[4] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia,* 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel,* 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009).

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

> [Plaintiff] would be limited to a moderate level of noise environment . . . and no exposure to hazards such as unprotected heights or moving machinery; [Plaintiff] would be limited to simple, routine tasks which can be learned after a short demonstration or within 30 days, could not perform a job requiring driving a vehicle or travel to unfamiliar places; [Plaintiff] can [have] no interaction with the public, occasional interaction with co-workers and can perform work that requires doing the same tasks every day with little variation in location, hours or tasks.

AR at 36.

Although Plaintiff had no past relevant work, the ALJ considered her age, education, work experience, RFC, as well as the testimony of the vocational expert ("VE") who testified at her hearing, and determined that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform: a janitor, a laundry worker, and a laundry folder. AR at 38–39. As such, the ALJ concluded that because Plaintiff's disability ceased on December 28, 2016 and she had not become disabled again since that date, she was not entitled to SSI. AR at 39.

On August 31, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## III. Stipulation to Remand and the Appeals Council's Remand Order

On October 26, 2020, Plaintiff sought review of the Commissioner's decision by the District Court. AR at 1429. Before the matter was fully briefed, Plaintiff and the Commissioner stipulated to a reversal of the Commissioner's decision and a remand for further proceedings. AR at 1422–23.

Although the Court's order remanding the case to the Commissioner did not provide a specific reason, the Commissioner's Appeals Council directed the ALJ to resolve the following issues:

> The Administrative Law Judge did not adequately discuss the [Plaintiff]'s medical improvement. The Administrative Law Judge provided little comparison of the evidence at the time of the most recent favorable determination (the comparison point decision (CPD)), with the evidence in 2016, when the claimant's medical improvement occurred. The Administrative Law Judge stated that "with counseling and medications, the claimant made improvement in controlling her symptoms related to autism and indeed, is no longer receiving therapy . . . . Additionally, the claimant has improved with respect to her ADHD symptoms as well" . . . . The Administrative Law Judge cited to two consultative examinations from December 2016 and June 2019 in support of th[ese] statements . . . . The Administrative Law Judge then went on to discuss the clinical findings, educational records, and medical opinion evidence from 2016 through 2019, but did not compare the findings and opinions from 2012 with the evidence from 2016-2019, as required by the regulations. Most notably, with respect to the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, the Administrative Law Judge discussed the claimant's functioning in 2016-2017, but did not explain why the claimant previously showed marked limitations in these domains and how she improved . . . .
>
> Additionally, at the CPD, the Administrative Law Judge relied on opinions from Philip F. Ricotta, Ph.D., Evelyn Smigelsky, Ph.D., and Thomas P. Williams, M.D. . . . . However, the opinions from Dr. Ricotta and Dr. Smigelsky appear in the record and are largely illegible, and the opinions from Dr. Williams are missing from the record.
>
> The Administrative Law Judge did not properly compare the claimant's condition at the time of the most recent favorable determination with her condition at the time of the medical improvement. Therefore, further development and evaluation of the claimant's medical improvement is warranted.

AR at 1427–28. Based on these issues, the ALJ was directed to further evaluate and discuss Plaintiff's medical improvements in accordance with 20 C.F.R. § 416.994a(c); obtain legible copies of records from Dr. Ricotta, Dr. Smigelsky, and Dr. Williams;

explain the weight given to medical opinions in the record; and, if necessary, obtain evidence from a medical expert related to the nature and severity of Plaintiff's functional limitations. AR at 1428.

## III. The ALJ Decision at Issue

Plaintiff appeared for a hearing before the ALJ on August 9, 2023. AR at 1301. For reasons that will be discussed in greater detail below, the hearing was adjourned so that Plaintiff's counsel could review documents that the ALJ added to the record, and discuss them with Plaintiff if necessary. AR at 1317. The hearing resumed on August 16, 2023, and the ALJ heard testimony from Plaintiff regarding her impairments, and from a VE. AR at 1288–1300.

In December 2023, the ALJ issued a decision which again found that Plaintiff ceased to be disabled on December 28, 2016 (AR at 1257), and determined that Plaintiff has not had an impairment or combination of disabling impairments since that time. AR at 1276. Further, after careful consideration of the entire record, the ALJ found that since attaining the age of 18 on October 4, 2017, Plaintiff has had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except for the following restrictions:

> [S]he is limited to a moderate noise environment . . . and no exposure to hazards such as unprotected heights or moving machinery. Mentally, [Plaintiff] would be limited to simple, routine tasks which can be learned after a short demonstration or within 30 days, and the work may include performing repetitive tasks. The work could not require driving a vehicle or traveling to unfamiliar places. [Plaintiff] can have no more than superficial interaction with the public, occasional interaction with co-workers and supervisors, and can perform work that requires doing the same tasks every day with little variation in location, hours, or tasks.

AR at 1271–1272. Based on this RFC, as well as Plaintiff's age, education, work

experience, and testimony from the VE, the ALJ determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a laundry worker, linen room attendant, and rack loader. AR at 1275–76. Accordingly, the ALJ found that Plaintiff had not been disabled since she attained the age of 18 and was not entitled to SSI benefits. AR at 1276.

Under 20 C.F.R. § 416.1484, after a case has already been remanded once by a Federal court, the decision of the ALJ becomes the final decision of the Commissioner unless the claimant elects to file exceptions to the ALJ's decision with the Appeals Council, or the Appeals Council assumes jurisdiction within 60 days after the date of the hearing decision. 20 C.F.R. § 416.1484(a)–(d). Here, Plaintiff does not appear to have filed any exceptions with the Appeals Council following the ALJ's December 2023 decision, and the Appeals Council does not appear to have assumed jurisdiction. The ALJ's 2023 decision therefore became the final decision of the Commissioner. *Id.* Plaintiff's complaint challenging the decision was filed in April 2024 (ECF No. 1), and the parties' respective motions for judgment on the pleadings (ECF Nos. 8, 17) are presently before the Court.

## LEGAL STANDARD

Where an individual's application for SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth

sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts

"only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff presents two issues for the Court's review. ECF No. 8-1. First, with respect to the cessation of Plaintiff's childhood SSI benefits, she argues that the ALJ failed to properly compare Plaintiff's condition at the CPD with her condition at the time of medical improvement in 2016, and thereby failed to follow the Appeals Council's remand order. *Id.* Second, with respect to the ALJ's findings regarding Plaintiff's impairments after she attained the age of 18, she argues that the ALJ erred in formulating her RFC by imposing his own lay interpretation of the evidence. *Id.* In response, the Commissioner maintains that the ALJ did not commit legal error, and that the RFC determination was based on substantial evidence. ECF No. 14-1.

After a thorough review of the record, the Court agrees with the Commissioner that the ALJ applied the proper legal standards, and that substantial evidence supported his findings with respect to Plaintiff's RFC.

## I. Plaintiff's Entitlement to SSI Benefits as a Child

Plaintiff points out that the Appeals Council's remand order observed that in the ALJ's 2019 decision, the ALJ "provided little comparison of the evidence at the time of the . . . CPD . . . with the evidence in 2016, when [Plaintiff]'s medical

improvement occurred." AR at 1427. Therefore, the Appeals Council directed the ALJ to "[f]urther evaluate and discuss [Plaintiff]'s medical improvement in accordance with 20 C.F.R. § 416.994a(c). AR at 1428. Plaintiff maintains that the ALJ failed to conduct the inquiry as directed.

### A. Legal Principles

The Commissioner's regulations require an ALJ considering a matter on remand to "take any action that is ordered by the Appeals Council[.]" 20 C.F.R. § 416.1477(b). Therefore, an ALJ's failure to comply with the Appeals Council's order constitutes legal error requiring remand. *Steven C. v. Comm'r of Soc. Sec.*, 592 F. Supp. 3d 132, 137 (W.D.N.Y. 2022) (citing, inter alia, *King v. Colvin*, No. 18-CV-6586-MJP, 2020 WL 1080411, at *3 (W.D.N.Y. Mar. 6, 2020) (collecting cases)).

Additionally, as noted above, 20 C.F.R. § 416.994a sets forth a three-step inquiry that an ALJ must conduct to determine whether a child SSI claimant's disability continues or has ended: (1) Has there been improvement in the claimant's condition? (2) Does the claimant's impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before? (3) Is the claimant currently disabled under 20 C.F.R. § 416.924? *See* 20 C.F.R. § 416.994a(b).[6]

---

[6] The Commissioner argues, in part, that Plaintiff is attempting to impose the requirements of 20 C.F.R. § 416.994 – the standard for adults – onto the requirements for children in 20 C.F.R. § 416.994a. He notes that whereas 20 C.F.R. § 416.994(b)(2)(i) requires the ALJ to make "a comparison of prior and current medical evidence" to determine whether there was medical improvement, there is no such language in 20 C.F.R. § 416.994a. ECF No. 17-1 at 20. The Court need not make a definitive ruling on this point, since whether or not the regulation requires it, the Commissioner's Appeals Council found that the ALJ's 2019 decision "did not properly compare [Plaintiff]'s condition" at the CPD with the time of the medical improvement (i.e., 2016 and thereafter), and directed the ALJ to "further evaluate and discuss [Plaintiff]'s improvement in accordance with 20 C.F.R. § 416.994a(c)." AR at 1428. Under the terms of the regulation, this requires "[a] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s)." As such, some comparison of the evidence is required.

**B. The August 2023 Hearings**

As stated above, after the matter was remanded by the Appeals Council, Plaintiff appeared for a hearing before the ALJ on August 9, 2023. AR at 1301. At the hearing, the ALJ noted the Appeals Council's concern with the legibility of records from Philip F. Ricotta, Ph.D., Evelyn Smigelsky, Ph.D., and Thomas P. Williams, M.D., which were significant to the CPD, and indicated that he was curing the issue by appending the entire file from the 2012 CPD to the record. AR at 1306–07. The ALJ also expressly recognized that the Appeals Council remanded the matter because his 2019 decision "had not adequately discussed the claimant's medical improvement," and had provided little comparison of the evidence from the 2012 CPD with the evidence from 2016 through 2019, when the improvement occurred. AR at 1307–08.

The ALJ then discussed his assessment of the opinions that informed the 2012 determination in Plaintiff's favor. First, he addressed the opinion from Dr. Ricotta, which he noted was from approximately 6 years before Plaintiff first filed an application for benefits. AR at 1309; *see also* AR at 1911–1921 (Dr. Ricotta's opinion). The ALJ recited Dr. Ricotta's summarization of his findings: "At this juncture, no medications are indicated for [Plaintiff] as she does not carry the formal diagnosis of ADHD. Indeed, her problems at this time seem to fall largely in the area of oppositional/defiant behavior while at home. This should be addressed with behavior modification and behavior management strategies." AR at 1309 (quoting AR at 1921).

Following the ALJ's discussion of Dr. Ricotta's opinion, Plaintiff's counsel indicated that he could not access the exhibit the ALJ was referring to. After an

exchange in which it became clear that counsel would not be able to access the documents on his own during the hearing, the ALJ stated "my office is going to email those records to you." AR at 1310–11.

The ALJ then discussed Dr. Williams' opinion. He noted that Dr. Williams evaluated Plaintiff in 2011, and reported that "[t]he patient has done very well at school and is very bright. She's had occupational therapy for sensory issues and fine motor skills and currently continues in the OT. There are no behavioral problems or concerns at school." AR at 1312 (quoting AR at 2063). The ALJ further noted that Dr. Williams found that Plaintiff "clearly" met the criteria for an Asperger's disorder, primarily with social deficits and lack of understanding. *Id.* However, he also noted that Dr. Williams stated that Plaintiff "has blossomed with the addition of Abilify. She is happier and started to recognize the authority of her parents and is much more flexible with her rules in the house. [She] loves the new way she feels and is exploring new opportunities that she rejected previously." AR at 1312–13 (quoting AR at 2070).

After cursorily stating that Dr. Smilgelsky's report was "an extremely detailed evaluation with a very comprehensive report," and making the observation that Plaintiff's primary conflicts seemed to be at home, the ALJ then turned to teacher evaluations. AR at 1314. The ALJ pointed first to a teacher evaluation from 2011, which indicated Plaintiff had multiple "serious" and "very serious" problems[7] in the areas of acquiring and using information, attending and completing tasks, and

---

[7] The 2011 questionnaire was completed by "Mrs. Melligan-Counselor," who indicated that she saw Plaintiff daily during the school year. AR at 1678. For each of the six functional domains, the teacher questionnaire form asks the teacher to assess the student's ability to do specific tasks (e.g., "Comprehending oral instruction") on a five point scale: (1) no problem, (2) a slight problem, (3) an obvious problem, (4) a serious problem, (5) a very serious problem. AR at 1679–83.

interacting and relating with others. *Id.* (discussing AR at 1678–81). These ratings, the ALJ stated, "would be supportive of [the former ALJ]'s original decision" in 2012. *Id.* However, the ALJ then cited a teacher evaluation from 2016[8] that used the same rating scale and indicated that Plaintiff had no "serious" or "very serious" problems acquiring and using information or interacting and relating with others, and no problems attending and completing tasks. *Id.* (discussing AR at 311–13).

The ALJ then said, "[s]o, as I read that record and with an eye towards addressing the Appeals Council'[s] considered concerns about my previous decision not showing medical improvement, I would argue that . . . the later evidence shows that" Plaintiff's limitations in the domains of acquiring and using information, interacting and relating with others, and attending and completing tasks had "gone from marked to less than marked." AR at 1315.

Plaintiff's attorney responded with a cursory argument that the evidence showed Plaintiff's impairments continued unchanged into her adult life, and that her extensive work with ACCES-VR (Adult Career and Continuing Education Services-Vocational Rehabilitation) was proof of that. AR at 1315–16. However, the attorney stated that he could not make a "robust" argument on the spot because he could not access the full record the ALJ was referring to. AR at 1316. Consequently, the ALJ adjourned the hearing to resume the following week so that the attorney would have the opportunity to review the full record and prepare his argument. AR at 1316–17

Nevertheless, when the hearing resumed on August 16, 2023, Plaintiff's

---

[8] The 2016 questionnaire was completed by Matthew Kresge, who also indicated he saw Plaintiff daily for 40 minutes for Earth Science, Biology, and Resource room. The questions and the rating scale appear to be the same between the 2011 and 2016 questionnaires. AR 310–17.

attorney did not make a "robust" argument regarding Plaintiff's impairments. Instead, following the ALJ's questioning of Plaintiff, counsel simply indicated that he had no follow-up questions. AR at 1294.

### C. The Comparative Analysis in the ALJ's Decision

In his December 2023 decision, the ALJ noted that, at the time of the 2012 CPD, Plaintiff's impairments resulted in marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. AR at 1256. The ALJ then opened his discussion of Plaintiff's medical improvement with the following paragraph:

> . . . . At the CPD, the evidence showed the claimant had difficulties with irritability, following directions, aggressiveness, and hyperactivity. The claimant's behavior at home was difficult to manage, with a high degree of oppositional behavior. Dr. Ricotta diagnosed the claimant as being a child at high risk for oppositional defiant disorder, (ODD), at risk for attention deficit, hyperactivity disorder, inattentive type, and having delayed visual memory deficits for detail, and delayed recognition deficits for rote memory. The claimant also had an occupational therapy evaluation with the school counselor on March 30, 2007. The classroom teacher requested an evaluation of the claimant due to sensory concerns exhibited in the classroom, such as making noises, disrupting the class, fidgeting, touching people and handling things on her desk. At a psychiatric evaluation on April 14, 2011, with Thomas P. Williams, M.D., Dr. Williams reported the claimant had a history of screaming fits at home, rigidity and obsessiveness at home, and social concerns, especially making and keeping friends [citing the 2012 decision, AR at 123–133]. In 2012, in the CPD, the prior Administrative Law Judge (ALJ) believed the claimant had marked limitations in the above domains based on this evidence.

AR at 1256.

Later in the decision, in the general discussion preceding his analysis of each of the six domains of functioning, the ALJ further stated:

> As for the claimant's ADHD and Autism Spectrum disorder, the record

shows that at the time of the CPD, she was in counseling for ADHD, oppositional defiance disorder ("ODD") and Asperger's, along with anxiety and depression, despite taking Concerta and Abilify, she had screaming fits at home, rigidity and obsessiveness at home, and had behavior problems at home and in public [referencing AR at 156[9]]. In class, she was disruptive, made noises, fidgeted, was highly active and in constant motion [referencing AR 156]. By December 2016, however, the records show significant improvement in the claimant's functioning, she was taking Abilify for her ADHD, which was working very well in managing her symptoms of tantrum behaviors and crying [citing AR at 728]. The claimant's mother was reporting that she had social difficulties and tantrums when at home, but admitted that she had none at school, and that the Abilify helped her focus and that before it, "you could not move anything in the house without her crying about things being touched in her world" [referencing AR at 155].

AR at 1259.

Following this discussion of Plaintiff's condition in 2012, and the evidence supporting the 2012 CPD, the ALJ included a very detailed, three-page summary of the evidence pertaining to Plaintiff's improvement over the period before she turned 18. AR at 1259–1262. Most significantly, the ALJ summarized the testimony of medical expert Dr. Adam McTighe. At Plaintiff's request in 2019, the ALJ held a supplemental hearing for testimony from Dr. McTighe after his review of the record to that point. AR at 98. Although he had not examined Plaintiff, in testimony replete with specific references to the record between 2013 and 2019, Dr. McTighe opined that Plaintiff suffered from the severe impairments of autism and ADHD, but that the autism was "mild autism really Asperger's . . . considered a . . . form of . . . high functioning autism and ADHD." AR at 104. He also opined that the evidence indicated that Plaintiff had less than marked limitation in the domains of acquiring

---

[9] The ALJ cited "B6F" (AR 567–77), but it is clear he is citing to "B6B" (AR 154–62), which is nearly verbatim the language in the ALJ's opinion.

and using information and interacting and relating with others, and no limitation in the domain of attending and completing tasks. AR at 105–08. Consequently, Dr. McTighe opined that the severity of Plaintiff's impairments neither met nor equaled any of the child listings. AR at 113.

Following his summary of the evidence, and a further four-page evaluation of each of the six domains of childhood functioning, the ALJ concluded that although Plaintiff had marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others at the time of the CPD, Plaintiffs' impairments caused less than marked limitations in those domains and did not functionally equal the listings as of December 28, 2016 until Plaintiff attained age 18 on October 5, 2017. AR at 1269.

Based on the ALJ's specific discussion of the Appeals Council's instructions in its remand order, his exchange with counsel at the hearing in August 2023, the reference in his decision to the evidence supporting the 2012 CPD, and the thorough analysis in the decision of the evidence between 2012 and the date of the decision, the Court finds the ALJ conducted the three step inquiry consistent with the requirements of 20 C.F.R. § 416.994a, and therefore did not fail to comply with the Appeals Council's remand order. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982) ("[A]lthough we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale 'in relation to evidence in the record,' we would not remand where 'we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by

substantial evidence.'"). *See also, e.g., Harris v. Berryhill,* No. 18-CV-651 (WFK), 2020 WL 8361918, at \*6 (E.D.N.Y. June 19, 2020) (citing, *inter alia, Cichocki v. Astrue,* 534 F. App'x 71, 76 (2d Cir. 2013)) (affirming the Commissioner's decision where "his analysis was more than sufficient for the Court to 'glean the rationale of the ALJ's decision' . . . . [and] the hearing transcript demonstrate[d] the ALJ" conducted the proper inquiry).

## II. Plaintiff's Entitlement to SSI Benefits as an Adult

In addition to challenging the ALJ's decision with respect to her childhood benefits, Plaintiff also challenges the ALJ's RFC determination for the period after she turned 18 years of age. In particular, she argues that the ALJ failed to properly assess Plaintiff's autism and crafted the RFC based on his own lay interpretation of the evidence. ECF No. 8-1 at 25–30.

### A. Legal Principles

"[An] ALJ cannot arbitrarily substitute [his or her] own judgment for competent medical opinion." *Riccobono v. Saul,* 796 F. App'x 49, 50 (2d Cir. 2020) (internal quotation marks omitted). Nevertheless, an RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.,* 855 F. App'x 46, 48 (2d Cir. 2024) (citing 20 C.F.R. § 404.1527(d)(2)). "Indeed, it is the very duty of the ALJ to formulate an RFC based on all relevant evidence, not just medical opinions, in Plaintiff's record." *Jennifer O. v. Comm'r of Soc. Sec.,* No. 20-cv-1474, 2022 WL 2718510, \*4 (W.D.N.Y. July 13, 2022) (citing 20 C.F.R. § 404.1545(a)(1)). Thus, "an ALJ's conclusions need not 'perfectly correspond with any of the opinions

of medical sources cited in his decision' because the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

## B. The ALJ's RFC Determination

Plaintiff argues that the ALJ formulated Plaintiff's adult RFC "without reliance on a functional medical opinion as to Plaintiff's Autism." ECF No. 8-1 at 27. In addition, she maintains that the ALJ failed to explain what evidence led him to conclude that Plaintiff could perform the specific RFC. *Id.* at 28.

The Court disagrees. In fact, the ALJ did explain why he concluded Plaintiff could perform the specific RFC, and cited multiple medical opinions in support of his conclusions.

To begin with, the ALJ discussed two consultative psychiatric examinations performed by Gregory Fabiano, Ph.D. The ALJ observed that after the first consultative examination in 2019, Dr. Fabiano opined that Plaintiff had no limitation in her ability to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; or have an awareness of normal hazards and take appropriate precautions. AR at 1274 (discussing AR at 1239). However, Dr. Fabiano opined that Plaintiff had moderate limitation in her ability to interact adequately with supervisors, co-workers, and the public, and regulate emotions, control behavior, and maintain well

being. *Id.*

The ALJ further noted that Dr. Fabiano opined after examining Plaintiff four years later, in 2023, that there was no evidence of limitation in her ability to understand, remember, and apply simple or complex directions and instructions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, or have awareness of normal hazards and take appropriate precautions. AR at 1274 (discussing AR at 2732–35). However, he opined that she appeared to have moderate limitations in ability to use reasoning and judgement to make work-related decisions, interact adequately with supervisors, coworkers, and the public, and regulate her emotions. *Id.*

Based on the evidence from Dr. Fabiano's evaluations of Plaintiff, the ALJ stated that he has "limited her to simple, routine tasks, which can be learned after a short demonstration or within 30 days, [and] to occasional interaction with supervisors and coworkers . . . ." AR at 1270. *See, e.g., Scott C. v. Comm'r of Soc. Sec.,* No. 23-CV-243 (JLS), 2025 WL 1713260, at *3 (W.D.N.Y. June 18, 2025) (collecting cases) ("Contrary to Plaintiff's assertion, the ALJ's RFC limiting Plaintiff to simple, routine tasks, occasional interaction with supervisors, coworkers, and the public, and occasional, simple changes, is consistent with [the consultative examiner]'s moderate limitations in regulating emotions, controlling behavior, and maintaining well-being."); *Alicia T. v. Comm'r of Soc. Sec.,* No. 6:21-CV-06529-RJA, 2023 WL 4999844, at *5 (W.D.N.Y. Aug. 4, 2023) (collecting cases) ("A moderate limitation in social interaction or ability to interact appropriately with the public, coworkers, or

supervisors can be accommodated by a restriction of no more than occasional interaction.").

Moreover, in his discussion of Plaintiff's adult RFC, the ALJ incorporated his opinion analysis from the findings regarding Plaintiff's childhood benefits. AR at 1274. ("All other opinion evidence has been discussed . . . above."). Of particular significance is the ALJ's discussion of the opinion of Lizbeth Booth, Ph.D., who performed a psychological evaluation of Plaintiff in November 2017, just one month after she turned 18. AR at 1261 (discussing AR at 1011–17). Dr. Booth opined that Plaintiff had learned to cope with her symptoms, but that there were times when her coping skills were ineffective; that Plaintiff's social emotional awareness and responsiveness were atypical and interfered with the development of relationships; and that she was unable to adjust readily to minor environmental changes, and effectively sequence tasks and complete activities. AR at 1261 (discussing AR at 1017). The ALJ noted that Dr. Booth's opinion summarized many of Plaintiff's limitations, and was accommodated to some extent in the RFC. AR at 1262. However, the ALJ did not fully adopt the opinion because it was inconsistent with the findings of the state psychological examiners. *Id.*

The ALJ also stated that he incorporated the opinion of testifying medical expert Dr. McTighe into his determination of Plaintiff's RFC as an adult, except that he inclued greater restrictions based on Plaintiff's testimony and Dr. Booth's opinion. AR at 1260. After reviewing the evidence, Dr. McTighe had concluded that Plaintiff did not have marked limitations in any of the four areas of paragraph B criteria: i.e., understanding, remembering, or applying information; interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR at 105. In discussing Dr. Fabiano's opinion, Dr. McTighe noted that whereas Dr. Fabiano had indicated no limitation in responding to changes in the work setting, he would say Plaintiff had moderate limitation. AR at 114.

In short, not only did the opinions of Dr. Fabiano, Dr. Booth, and Dr. McTighe make specific reference to Plaintiff's functional limitations, the ALJ also expressly discussed how he incorporated those limitations into his RFC determination. Accordingly, Plaintiff's argument that the ALJ imposed his own lay interpretation on the evidence in his formulation of the RFC is without merit.

CONCLUSION

For the foregoing reasons, Plaintiff Paige P.'s motion for judgment on the pleadings [ECF No. 8] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 17] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:       September 24, 2025
             Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge